SCHWARTZMAN, INC., a New Mexico corporation, and the State of New Mexico, ex rel. Schwartzman, Inc., Plaintiff,

v.

GENERAL ELECTRIC COMPANY, a New York corporation; et al., Defendants.

No. 93–27–M Civil.

United States District Court, D. New Mexico.

Oct. 19, 1993.

Paul G. Bardacke, Eaves, Bardacke & Baugh, Albuquerque, NM, for Schwartzman, Inc. and State of New Mexico ex rel. Schwartzman, Inc.

Michael J. Cadigan, Sutin, Thayer & Browne, Albuquerque, NM, William J. Killoran, Gen. Elec. Co., Environmental Affairs Counsel, Cincinnati, OH, John A. Bannerman, Beall, Biehler & Bannerman, John F. Barg, James Arthur Bruen, Derrick Watson, Landels, Ripley and Diamond, San Francisco, CA, for Gen. Elec. Co.

Alan R. Wilson, Dines, Wilson & Gross, Albuquerque, NM, for ACF Industries, Inc.

Gregory D. Huffaker, Jr., Huffaker, Nelson & Barnes, Santa Fe, NM, B. Mark Hausman, Richard W. Kuhling, Paine, Hamblen, Coffin, Brooke & Miller, Spokane, WA, Alberto A. Leon, Kelly, Rammelkamp, Muehlenweg, Lucero & Leon, Albuquerque, NM, for Chevron Pipeline Co. and Chevron, USA.

Marte D. Lightstone, Lyman G. Sandy, Miller, Stratvert, Torgerson and Schlenker, Albuquerque, NM, Laurence K. Gustafson, Haynes and Boone, Dallas, TX, Jay Gwin, San Antonio, TX, for Phillips Pipeline Co., Texaco Pipeline Inc., West Emerald Pipeline Corp., Diamond Shamrock Refining and Marketing Co. and The ATA Group.

Richard L. Alvidrez, Russell Moore, Keleher and McLeod, Albuquerque, NM, Ronald N. Ricketts, Gable and Gotwals, Tulsa, OK, for Texaco Refining and Marketing, Inc.

John W. Zavitz, U.S. Attys. Office, D.N.M., Albuquerque, NM, Burke M. Wong, U.S. Dept. of Justice, Washington, DC, for U.S.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter comes on for consideration on motions by the defendants to dismiss Count VI of the complaint, strict liability. This issue was raised in the following motions:

- Motion filed March 22, 1993 by defendants Chevron, USA and Chevron Pipeline;
- Motion filed March 22, 1993, by defendants Texaco Pipeline, Inc, West Emerald Pipeline, ATA Group, and Phillips Pipeline Co.;
- Motion filed March 22, 1993, by Texaco Refining and Marketing, Inc.; and
- Motion filed May 12, 1993, by General Electric Company.

Having considered the motions, the responses and replies, and being otherwise advised of the premises, I find that the motions to dismiss Count VI of the amended complaint are well taken and will be granted.

### BACKGROUND

This case arises at a Superfund site in the South Valley of Albuquerque. Plaintiff Schwartzman's Inc. (hereinafter "Schwartzman's") owns approximately 725 acres of land in the South Valley. Schwartzman Packing Company (hereinafter "SPC") operated a meat packing and processing plant on a portion of the property between 1903 and 1981.

Other portions of the land were used for agricultural purposes until 1985. The individual defendants own and/or operate commercial or industrial facilities in the area immediately surrounding and adjacent to Schwartzman's property.

General Electric Company (hereinafter "GE") owns and operates a jet engine manufacturing and assembly plant at 336 Woodward Road SE, adjacent to plaintiff's property. The site was operated as an Atomic Energy Commission facility between 1951 and 1967. Site operations during that period included welding, plating, and machining metal parts and structures, welding and machining plastics, and manufacturing and assembling the metal parts of nuclear weapons, principally bomb casings. The U.S. Air Force purchased the site in 1967 and GE undertook to operate the plant under contract. GE purchased the plant in 1983 and continued operations. GE uses several chlorinated solvents in manufacturing processes at the site.

Chevron, Chevron Pipeline, Texaco, Texaco Pipeline, and Shamrock operate several petroleum facilities near and adjacent to plaintiff's property. Since 1950, Chevron has operated a petroleum-product handling facility in the area storing gasoline, diesel fuel, jet fuel, kerosene and other petroleum products. As part of this facility, Chevron or Chevron Pipeline built, owns and operates a petroleum products pipeline with a terminus near the south end of the Chevron facility. From there, the pipeline runs south of the facility, through parts of Schwartzman's property and south to El Paso, Texas. Chevron operates another line which runs east to the Albuquerque International Airport, also crossing plaintiff's property.

Texaco has operated, since 1950, a petroleum product handling facility immediately west of the Chevron facility. Texaco stores gasoline, diesel fuel, jet fuel, and other petroleum products which are transported to the facility via pipeline shared by Shamrock and West Emerald.

Shamrock and West Emerald constructed a petroleum product pipeline parallel to the Chevron pipeline south through plaintiff's property. This pipeline serves Albuquerque, Tucumcari and Amarillo (hereinafter "the ATA pipeline"), and is used by Shamrock and other defendants to transport petroleum products.

This history of the site contamination is not clear. Prior to the enactment of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. (hereinafter "RCRA"), the storage and disposal of hazardous waste was not regulated in this country. Apparently solvents and other hazardous wastes were disposed of in unlined pits and ditches on the GE site, a practice which would not be allowed under regulations adopted pursuant to RCRA. The site falls under the purview of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 et seq. (hereinafter "CERCLA") and remediation activities are conducted under the direction of the Environmental Protection Agency (hereinafter "EPA").

## DISCUSSION

■ On a motion to dismiss for failure to state a claim the court looks to whether the plaintiff's complaint is legally sufficient to state a claim for which relief may be granted. *Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991). The court views facts in the light most favorable to the plaintiff, and grants the motion to dismiss when the plaintiff can establish no set of facts that entitle him to relief. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

■ The factual disputes in this case are not relevant to the strict liability question. The parties agree that the site is contaminated by both petroleum products and hazardous waste. The EPA identified potentially responsible parties who are currently acting in accordance with EPA's compliance order. Numerous monitoring wells and treatment wells are in place on plaintiff's property. The question I address in this memorandum opinion is whether plaintiff has a strict liability claim against defendants found to have disposed of petroleum products or hazardous waste in the vicinity.

In this diversity action, the federal court applies New Mexico substantive tort law. *Eisenstadt v. Baird,* 405 U.S. 438, 442, 92 S.Ct. 1029, 1032, 31 L.Ed.2d 349 (1972). The New Mexico Supreme court has not determined whether the use, storage, or transportation of petroleum products, hazardous substances or hazardous wastes fall within the claim of common law strict liability. Therefore, I must determine whether the state court would expand the strict liability doctrine to the circumstances of this case. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). New Mexico first recognized strict liability in torts in *Thigpen v. Skousen & Hise,* 64 N.M. 290, 327 P.2d 802 (1958). The court referenced the Restatement of Torts, §§ 519 and 520 for a description of the doctrine and the circumstances under which an activity is ultrahazardous. The Court has declined to expand the strict liability doctrine since *Thigpen,* and relies still on the criteria in § 520 of the Restatement (Second) of Torts to determine when the doctrine applies.

The plaintiff argues, and I agree, that the New Mexico Supreme Court has not foreclosed expansion of the doctrine where the § 520 criteria are met. *See Rodgers v. City of Loving,* 91 N.M. 306, 573 P.2d 240 (Ct.App. 1977) (no strict liability for admittedly dangerous activity, burning weeds, where the utility is great and it is "clearly sanctioned by universal use."); *First Nat. Bank in Albuquerque v. Nor–Am Agr. Products, Inc.,* 88 N.M. 74, 537 P.2d 682 (Ct.App.1975) (decline to extend "ultrahazardous activity" to use of Panogen on grain because it is commonly used and danger can be eliminated if properly handled); *Otero v. Burgess,* 84 N.M. 575, 505 P.2d 1251 (Ct.App.1973) (storage of explosives may be ultrahazardous activity if inappropriate to the site). To determine whether the state court would apply strict liability in this case, I look to the Restatement Second of Torts.

Section 519 of the Restatement states the general principal that one who participates in an ultrahazardous or abnormally dangerous activity is liable for any resulting harm to the person or property of another even though he had exercised great care in conducting the activity. Restatement (Second) of Torts, § 519 (1977). Strict liability is only appropriate for dangerous and unusual activities for which negligence is an inadequate remedy or deterrent. *Arlington Forest Associates v. Exxon Corp.* 774 F.Supp. 387, 390 (E.D.Va.1991). An activity is ultrahazardous when most or all of the following criteria are met:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977).

Most of the strict liability criteria are not met in this case. Although hazardous material and petroleum products may present a substantial degree of risk to persons or property when mishandled, I conclude that the risks can be eliminated through the exercise of reasonable care. Indeed, the premise of many environmental laws (RCRA; Toxic Substances Control Act, 15 U.S.C. §§ 2601 et seq.; Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 et seq.) is that proper handling and disposal of these materials minimizes or eliminates the risk of their use. Both petroleum products and solvents are commonly used, and their use at an industrial facility was appropriate.

I find that the New Mexico Supreme Court would decline to extend the doctrine of strict liability to the handling, transportation, storage or disposal of petroleum products and hazardous waste under the circumstances here presented and I grant defendants' motions to dismiss Count VI of the complaint.

**IT IS SO ORDERED.**