Jack E. GREENE, et al., Plaintiffs,

v.

PRODUCT MANUFACTURING
CORPORATION,
Defendant.

Civ. A. No. 91–1402–MLB.

United States District Court,
D. Kansas.

Dec. 28, 1993.

Brian G. Grace, Jana C. Werner, Grace, Unruh & Pratt, Wichita, KS, Randall K. Rathbun, Office of U.S. Atty., Wichita, KS, for plaintiffs.

David G. Seely, Stephen M. Stark, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on Product Manufacturing Corporation's (PMC) motion for summary judgment, pursuant to Fed. R.Civ.P. 56. (Doc. 74) The plaintiffs brought this action under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)[1] seeking to recover response costs incurred in cleaning up groundwater pollution at a site in Wichita, Kansas.

From approximately 1970 through August 1988, PMC conducted a metal fabrication business at 4225 Bounous, an industrialized area of Wichita, Kansas. Prior to July, 1978, plaintiffs were the only stockholders of PMC. On July 28, 1978, PMC leased the property from the plaintiffs and occupied it to conduct its manufacturing business. Throughout the period of its operations at 4225 Bounous, PMC used solvents containing trichloroethylene (TCE) to degrease metal parts. TCE is a solvent commonly used in the metal fabrication business.

The Kansas Department of Health and Environment (KDHE) investigated the site and determined it was a source of groundwater contamination. The KDHE determined that a removal action was necessary to abate the pollution threat.[2]

Plaintiffs filed this private party cost recovery action on September 25, 1991. In the interim period following commencement of this suit, the plaintiffs conducted negotiations with KDHE and entered into a consent order with KDHE in March, 1993. Under the terms of the consent order, the plaintiffs agreed to carry out a removal action under the oversight of KDHE. The United States Environmental Protection Agency (EPA) is not a party to the consent order.

---

1. 42 U.S.C. § 9601 *et seq.* The court notes that a jury trial has been requested by the plaintiffs. It has uniformly been held that there is no right to a jury trial in a cost recovery action. *American Cyanamid Co. v. King Industries, Inc.,* 814

F.Supp. 209, 214 (D.R.I.1993) (Citations omitted).

2. The dates of the KDHE's investigation and determination are not part of the record.

### Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Thrasher v. B & B Chemical Co., Inc.,* 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### Attorney's Fees

CERCLA was enacted in 1980 to facilitate the cleanup of leaking hazardous waste disposal sites. *Exxon Corp. v. Hunt,* 475 U.S. 355, 359–60, 106 S.Ct. 1103, 1108, 89 L.Ed.2d 364 (1986). One of its provisions allows both government and private parties to recover from responsible parties the costs incurred in cleaning up and responding to hazardous substances at abandoned and inactive waste disposal sites. 42 U.S.C. § 9607(a).

To state a claim under 42 U.S.C. § 9607(a), a plaintiff must allege that: (1) the defendant is a "covered person" within the meaning of the Act; (2) a "release" or "threatened release" of any "hazardous substance" from the site in question has occurred; (3) the release or threatened release caused plaintiff to incur costs; (4) plaintiff's costs are "necessary" costs of response; and (5) plaintiff's response actions were consistent with the National Contingency Plan (NCP). *Reading Co. v. City of Philadelphia,* 823 F.Supp. 1218, 1227–28 (E.D.Pa.1993).

Plaintiffs seek to recover attorneys fees as a necessary cost of response under CERCLA. The Tenth Circuit recently addressed this issue and held that a private party may not recover attorneys fees arising from the litigation of a private recovery action under CERCLA. *FMC Corporation v. Aero Industries, Inc.,* 998 F.2d 842, 847 (10th Cir.1993). However, the court also held that recovery of nonlitigation attorneys fees was not precluded. *Id.* The court gave examples of fees that may fall under the latter category. These included fees generated in designing and negotiating the removal action and preparing and carrying out the work plan approved by the government, fees incurred for negotiating and drafting contracts with environmental professionals who performed the removal work, negotiating changes to the work plan, and monitoring work progress. *Id.* at 848.

*FMC Corp.* governs the court's decision. Accordingly, the court holds that plaintiffs cannot recover attorneys fees incurred in litigating the recovery action, but may seek to recover reasonable and necessary attorneys fees for removal-related nonlitigation activities.

### Notice

■ PMC argues that plaintiffs failed to timely provide notice to the EPA and the Attorney General as required by 42 U.S.C. § 9613(*l*).[3] The EPA has interpreted the notice provisions of the statute to require concurrent notice. 55 Fed.Reg. 8798 (March 8, 1990). Plaintiffs' counsel filed the required notice on February 17, 1993, nearly a year and a half after the lawsuit was filed.[4]

The court is unable to locate any authority discussing the legal effect of a failure to provide timely notice. PMC suggests the appropriate sanction for plaintiffs' delay in giving the required notice should be either dismissal with prejudice or dismissal until the EPA is given time to conduct an investigation. The court views PMC's suggested sanction as overly harsh. The appropriate inquiry, in our judgment, is whether the plaintiffs' failure to provide timely notice caused prejudice to PMC. On the record before us, the court cannot say whether it has or has not. The EPA thus far has not attempted to intervene in this cleanup action, despite having notice. The affidavit submitted by plaintiffs' attorney[5] indicates that "based on past assurances from employees of the EPA" he believes the EPA will not intervene in this case. PMC counters, without citation to authority or evidence, that plain-

tiffs' failure to notify EPA could expose PMC to double liability. Both of these statements are slim reeds upon which to base summary judgment. The court directs that the parties depose an EPA employee with the authority to settle the issue of the EPA's involvement, if any, and the correlative issue of PMC's potential exposure to double liability. The deposition shall be taken within 30 days of this order.

Under these circumstances, the court declines to grant summary judgment on the basis of the plaintiff's failure to timely comply with § 9613(*l*).

### Consistency with the NCP

PMC argues the plaintiffs have failed to demonstrate "consistency" with the NCP and asks the court to dismiss the plaintiffs' claims for past and future response costs. In the alternative, PMC contends that any judgment for such costs should be held in abeyance until plaintiffs present evidence of their compliance with the NCP.

The NCP is a set of regulations promulgated by the EPA that "establish[es] procedures and standards for responding to releases of hazardous substances." *County Line Inv. Co. v. Tinney,* 933 F.2d 1508, 1511 (10th Cir.1991) (Citations omitted). Its purpose "is to give some consistency and cohesiveness to response planning and actions." *Bunger v. Hartman,* 797 F.Supp. 968, 973 (S.D.Fla. 1992) (Citation omitted).

■ In 1990, the EPA revised the NCP and its provisions for determining the consistency of private party response actions.[6] *See*

---

3. 42 U.S.C. § 9613(*l*) provides:

Whenever any action is brought under this Act in a court of the United States by a plaintiff other than the United States, the plaintiff shall provide a copy of the complaint to the Attorney General of the United States and to the Administrator of the *Environmental Protection Agency.*

4. Plaintiffs' counsel explains his delay in giving the required notice as follows:

This was not done earlier because of plaintiffs' counsel's incorrect recollection that notice to the lead agency (KDHE) was all that was required under the statute. (Doc. 79, pp. 9–10)

5. Ted E. Knopp. (Doc. 79)

6. Response costs under CERCLA fall into two broad categories. 42 U.S.C. § 9601(25) defines "response" to mean "removal, remedy, and remedial action." "Removal actions" may include

such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, ... or the taking of such actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment....

42 U.S.C. § 9601(23).

On the other hand, the terms "remedy" or "remedial action" mean

those actions consistent with permanent remedy taken instead of or in addition to removal

55 Fed.Reg. 8666 (1990). The EPA now considers a private party response action "consistent" with the NCP if the action is in substantial compliance with the applicable requirements and results in a CERCLA-quality cleanup. *Tinney,* 933 F.2d at 1514 (citing 40 C.F.R. § 300.700(c)(3)(i)).[7] The burden of proof to establish compliance with the NCP by a preponderance of the evidence rests with the plaintiffs. *Id.* n. 10.

PMC argues that the plaintiffs have barely scratched the surface in terms of the scope of their investigation and remediation of the pollution. Additionally, they contend that the absence of a public comment period or other meaningful public participation runs afoul of the NCP. *Tinney,* 933 F.2d at 1514–15 (undisputed fact that plaintiffs provided no opportunity for public comment indicates that costs incurred in closing landfill were not consistent with NCP).

█ The court cannot find, at this juncture,[8] that the plaintiffs' actions are so preliminary as to preclude compliance with the NCP. There are no uncontroverted facts in the motion upon which the court can make such a ruling. Instead, the parties paint widely divergent pictures of what actions the plaintiffs have taken. According to PMC, the plaintiffs' actions have been limited to collecting a few soil gas samples, a handful of groundwater samples, and submission of a draft plan for additional investigation. On the other hand, the plaintiffs contend they have spent over $50,000 for environmental consultants and have performed voluminous investigative work. The court is unable to resolve this factual dispute at this stage.

█ As for the opportunity for public comment, the plaintiffs contend that the provisions of the consent order with KDHE providing for a community relations program under the aegis of the KDHE satisfies this requirement. Plaintiffs also assert a public hearing would be premature at this stage and nonrecoverable as a necessary cost of response.

█ Removal actions taken pursuant to the NCP are subject to requirements to inform the community and provide a public comment period. 40 C.F.R. § 300.415(m). However, the community relations requirements for removal actions are less stringent than for remedial actions. *Compare* 40 C.F.R. § 300.415(m) (1992) with 40 C.F.R.

actions ... to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.
42 U.S.C. § 9601(24).

"Removal" costs are those that are incurred in response to an immediate threat to the public health or environment and that are intended primarily for the short-term abatement of toxic waste hazards. 40 C.F.R. § 300.3 (1992); *Bolin v. Cessna Aircraft Co.,* 759 F.Supp. 692, 711 (D.Kan.1991); *Cook v. Rockwell Intern. Corp.,* 755 F.Supp. 1468, 1473 (D.Colo.1991). Remedial actions are generally considered to be long-term attempts to restore environmental quality. *Bolin,* 759 F.Supp. at 711; *Channel Master Satellite v. JFD Electronics Corp.,* 748 F.Supp. 373, 385 (E.D.N.C.1990). The distinction between these actions is of no small importance, for whereas removal actions need only comply with the relatively simple NCP requirements set forth at 40 C.F.R. § 300.65, remedial actions must comport with the "more detailed procedural and substantive provisions of the NCP" as set forth at 40 C.F.R. § 300.68. *Amland Properties Corp. v. Aluminum Co.,* 711 F.Supp. 784, 795 (D.N.J. 1989).

The response costs in this case were incurred for the investigation and testing of groundwater contamination. The courts appear to agree that such activity constitutes a "removal" action. *Bolin,* 759 F.Supp. at 711.

7. 40 C.F.R. § 300.700(c)(3) provides: For the purpose of cost recovery under section 107(a)(4)(B) of CERCLA:

(i) A private party response action will be considered "consistent with the NCP" if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in paragraphs (c)(5) and (6) of this section, and results in a CERCLA-quality cleanup;

(ii) Any response action carried out in compliance with the terms of an order issued by EPA pursuant to section 106 of CERCLA, or a consent decree entered into pursuant to section 122 of CERCLA, will be considered "consistent with the NCP."

8. In *Tinney,* the Tenth Circuit recognized that an "[E]arly determination of a defendants' liability for as yet unproven CERCLA cognizable costs ... can speed the settlement process and thus promotes Congress' goal of encouraging private parties to undertake and fund CERCLA cleanups." *Id.* at 1513, n. 9 (Citations omitted). In *Tinney,* unlike this case, there was a "fully developed record" upon which the district court could make an NCP consistency determination.

§ 300.430(c) (1992). The fact that this action is a removal action distinguishes this case from *Tinney*. In a removal action, it is permissible to wait until after the cleanup has been commenced to carry out the community relations requirements of the NCP. The court is persuaded that the provisions of the consent decree providing for a community relations program through the KDHE are sufficient to satisfy the requirements of the NCP.[9]

Accordingly, the court denies PMC's motion for summary judgment on plaintiffs' CERCLA claim.

### Rylands v. Fletcher

PMC seeks summary judgment on plaintiffs' claim under the *Rylands v. Fletcher* doctrine, which provides for strict liability for abnormally dangerous activities. *See Williams v. Amoco Production Co.,* 241 Kan. 102, 113, 734 P.2d 1113 (1987). In *Williams,* the Kansas Supreme Court acknowledged its previous application of the *Rylands* doctrine but went on to adopt Sections 519 and 520 of the Restatement (Second) of Torts to aid it in determining whether natural gas was an abnormally dangerous substance and whether the drilling and operation of natural gas wells is an abnormally dangerous activity. *Id.* at 115–16, 734 P.2d 1113. In the more recent case of *Falls v. Scott,* 249 Kan. 54, 815 P.2d 1104 (1991), the Supreme Court reaffirmed its adoption of Restatement Sections 519 and 520 and stated that an activity is abnormally dangerous if danger inheres in the performance of the work. *Id.* at 61, 815 P.2d 1104.

■ The plaintiffs contend that Kansas recognizes two forms of strict liability that have their genesis in *Rylands v. Fletcher.* According to the plaintiffs, the first form covers liability for abnormally dangerous activities and the second form exists when a defendant brings a harmful substance onto its property and allows it to escape. Plaintiffs' case is alleged to arise under the second form. PMC responds that the *Ryland v. Fletcher* doctrine and the strict liability doctrine under the Restatement are not separate and distinct theories of recovery.

The court is persuaded that PMC's argument is the sounder view. Our reading of *Williams* indicates that the Kansas Supreme Court intended to use Sections 519 and 520 to analyze claims involving abnormally dangerous substances and activities. While it did not repudiate *Rylands,* it recognized that the Restatement embodies the modern concept of strict liability and provides a series of factors to help guide the determination of when a substance or an activity is abnormally dangerous. *Laterra v. Treaster,* 17 Kan. App.2d 714, 721, 844 P.2d 724 (1992). Accordingly, the court must focus on the nature of PMC's metal fabrication activity, which includes the use of TCE, and decide whether the activity is abnormally dangerous.

■ Applying the Restatement factors[10] to the case at bar, it is clear that PMC's

**9.** A similar issue arose in *General Elec. Co. v. Litton Business Systems, Inc.,* 715 F.Supp. 949 (W.D.Mo.1989), aff'd on appeal, 920 F.2d 1415 (8th Cir.1990). In *General Elec.,* the plaintiff entered into a consent decree with the Missouri Department of Natural Resources (MDNR) to clean up a hazardous waste site. The defendant argued that the plaintiff failed to comply with the NCP by not holding public hearings. The court rejected defendant's argument and stated:

> It is clear to the Court that no public hearing was required due to the fact that GE was complying with legally applicable or relevant and appropriate state requirements that the waste be removed. Furthermore, if notice to the public is a requirement, the input of the Missouri Department of Natural Resources serves as a substitute for public comment. Defendant was specifically notified that a cleanup was necessary and that defendant was considered a responsible party.

*Id.* at 961.

**10.** Section 520 of the Restatement (Second) of Torts provides:

> In determining whether an activity is abnormally dangerous, the following factors are to be considered:
>
> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

activities do not trigger strict liability. PMC's metal fabrication business involves neither a high degree of risk nor a likelihood of great harm resulting from that risk. The activity has been carried on for decades, apparently without incident. TCE's function in the manufacturing process is to degrease machine parts. It is a commonly used solvent in the metal fabrication business. The procedures surrounding its use are undoubtedly well-established. When properly used, it poses virtually no threat to environment.

PMC's manufacturing activities are indispensable to the economy of Wichita. Metal fabrication is a necessary part of the manufacturing process of airplanes. The aviation industry employs tens of thousands of workers in Wichita. The location of PMC's activities was appropriate. They were carried on in an industrialized area of Wichita, Kansas.

The court holds that PMC's activities were not abnormally dangerous and that application of strict liability is not appropriate in this case.

IT IS THEREFORE ORDERED that PMC's motion for summary judgment is granted as to plaintiffs' claims for attorneys fees incurred in litigating the recovery action and strict liability for abnormally dangerous activities, and denied as to plaintiffs' claim under CERCLA.

Motions for reconsideration of this order are not encouraged. Any such motion, as well as the response thereto, shall be limited to 5 pages, including exhibits and attachments. No replies shall be permitted.