HATCO CORPORATION, Plaintiff,

v.

W.R. GRACE & CO.—CONN., Defendant, Third–Party Plaintiff,

v.

ALLSTATE INSURANCE CO., et al., Third–Party Defendants.

Civ. A. No. 89–1031.

United States District Court, D. New Jersey.

Aug. 10, 1994.

As Amended Aug. 22, 1994.

---

Aubrey M. Daniel, III, Paul Mogin, Sharon L. Davis, Williams & Connolly, Washington, DC and Robert M. Goodman, Carpenter, Bennett & Morrissey, Newark, NJ, for plaintiff.

Anthony J. Marchetta, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for defendant-third party plaintiff Grace.

## OPINION

WOLIN, District Judge.

This matter is before the Court on the motion of defendant/third-party plaintiff W.R. Grace & Co.—Conn. ("Grace"), pursuant to Federal Rule of Appellate Procedure 10(e) ("Rule 10(e)"), for entry of an order correcting an omission in the record and denying Grace's motion for a jury trial. Plaintiff Hatco Corporation ("Hatco") has opposed the entry of the requested order under Rule 10(e). The Court has reviewed the parties' written submissions and is prepared to rule expeditiously on the motion in view of the briefing schedule for Grace's appeal which is currently pending before the Third Circuit Court of Appeals.

## BACKGROUND

The general history of this case need not be addressed on the pending motion. This litigation has spawned numerous, and often lengthy, opinions. Presumably, the regular readers of the *Hatco v. Grace* opinions grow weary—as does the Court—from the virtually ceaseless recapitulation of historical background. Nonetheless, the Court must revisit certain facts and events given the nature of Grace's pending request and the consequent relevance of the circumstances surrounding the parties' demands for—and the Court's decision to forego—a jury trial on the claims ultimately tried before the Court in July 1993. To this end, the Court gleans the following from the case file and the parties' written submissions on the pending motion.

In a letter to this Court and Special Master Donald A. Robinson, dated October 27, 1992, Grace referenced Hatco's pleadings and demand for a jury trial on all issues and stated that it was entitled to rely, and would rely, on those jury demands.

On October 28, 1992, Hatco filed its Third Amended Complaint and Demand for Jury Trial. The complaint contained claims under the federal Comprehensive Environmental Response Compensation and Liability Act

("CERCLA"), the New Jersey Spill and Compensation and Control Act ("the Spill Act") and the common law of contract and strict liability. Hatco demanded a jury trial on the common law and CERCLA claims on all issues presented, but, with respect to the Spill Act, sought a jury trial only on the question of treble damages.

On October 29, 1992, Grace filed its Answer to Hatco's Third Amended Complaint and Demand for Jury Trial. Grace's answer contained counterclaims for indemnification under New Jersey common law and for contribution under CERCLA, the Spill Act and the New Jersey Joint Tortfeasor Contribution Act (the "Tortfeasor Act"). In addition, Grace demanded a jury trial as to all issues presented in its counterclaims.

At a conference on October 29, 1992, the parties agreed to file briefs simultaneously on the jury trial issues.

On November 2, 1992, Grace filed its brief in support of a jury trial and asserted that it had a right to rely on Hatco's demand for a jury trial, and based upon that reliance, had a right to a jury trial on its counterclaims. In addition, Grace argued that the right to a jury trial on its counterclaims existed independently of Hatco's initial demand.

On the same day, Hatco filed its brief, in which it argued that its CERCLA cost recovery and Spill Act contribution claims were triable to the Court and that Grace's counterclaims were not triable to a jury. The parties subsequently filed replies to each other's brief.

On December 24, 1992, Hatco filed a motion for summary judgment on Grace's First and Third Counterclaims—the common law indemnification claim and the Spill Act/Tortfeasor Act contribution claim, respectively.

On January 15, 1993, Hatco moved to voluntarily dismiss Count Three (common law contract claim) of its Third Amended Complaint.

On January 19, 1993, the parties convened in this Court's chambers for a status/settlement conference (the "January 19 conference"). During this meeting, the outstanding jury trial issue was raised. Both parties seem to agree now that the Court indicated that the jury demands of both Hatco and Grace would be denied.

On January 25, 1993, the Court signed the order dismissing Hatco's common law contract claim. On February 17, 1993, the Court issued another order dismissing the same claim, with prejudice.

In a letter to the Court dated March 10, 1993, Hatco brought to the Court's attention a decision from the District of Rhode Island which allegedly supported Hatco's position that there is no right to a jury trial on a contribution claim under CERCLA.

On April 15, 1993, on the consent of counsel for both parties, the Court issued Case Management Order No. 3 ("CMO No. 3"), wherein the trial was set to commence on July 19, 1993, except on the issue of treble damages under the Spill Act. In addition, CMO No. 3 established guidelines and procedures for trial, including the specification of dates in which the parties were to file proposed findings of fact and conclusions of law after the close of the trial.

On May 13, 1993, the Court issued an order designating the equitable factors upon which the Court planned to rely in assessing Grace's counterclaims for contribution under CERCLA and the Spill Act.

On May 24, 1993, the Court filed Case Management Order No. 4 ("CMO No. 4"), which changed the dates for the start of trial and for the submission of proposed findings of fact and conclusions of law.

On June 18, 1993, the Court held another status/settlement conference. The minutes of proceedings filed the same day indicate that a non-jury trial was fixed to commence on July 12, 1993, and did so, as evidenced by the minutes of proceedings filed on July 12, 1993.

On July 16, 1993, the Court issued a Memorandum and Order granting Hatco's motion for summary judgment, filed on December 24, 1992, and dismissed Grace's First and Third Counterclaims—the common law indemnification claim and the Spill Act/Tortfeasor Act contribution claim.

Only three issues were tried during the non-jury trial commencing on July 12, 1993:

(1) Hatco's cost recovery claim under CERCLA, (2) Hatco's contribution claim under the Spill Act, and (3) Grace's counterclaim under CERCLA.

Following the three and one-half week trial in July, an additional one week trial in October 1993 and the publication of two bench opinions of considerable length, replete with extensive findings of fact and conclusions of law, the Court entered judgment in favor of Hatco and against Grace on April 29, 1994, in an amount in excess of $12 million. Hatco had successfully established Grace's liability under CERCLA and the Spill Act. While achieving some degree of success with its divisibility defense to Hatco's CERCLA claim, Grace failed to establish Hatco's liability on the CERCLA contribution claim.

On May 12, 1994, Grace filed a Notice of Appeal of the final judgment with the Third Circuit. On May 31, 1994, Grace filed a civil appeal case statement, in which it identified the following as a proposed issue to be raised on appeal: "a party seeking contribution under § 113 of CERCLA and the New Jersey Spill Act is entitled to a jury trial."

On the pending motion, Grace seeks to complete the record and asserts that the Court failed to record in a formal order its decision to deny the demands for a jury trial. In opposition, Hatco asserts that Federal Rule of Appellate Procedure 10 does not authorize the type of relief requested by Grace and that the consequences of the failure to preserve the record on the jury trial issue must fall upon Grace.

## DISCUSSION

### A. Applicability of Federal Rule of Appellate Procedure 10(e)

As a threshold matter, the Court must reject Hatco's argument that Rule 10(e) is not applicable in the instant case. The district court may supplement the record on appeal in two instances under Rule 10(e): (1) when "any difference arises as to whether the record truly discloses what occurred in the district court," and (2) when "anything material to either party is omitted from the record by error or accident or is misstated therein." Rule 10(e) provides a mechanism for ensuring that the record reflects accurately what transpired in the district court. It does not authorize a district court "to add to the record on appeal matters that did not occur there in the course of proceedings leading to the judgment under review." *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987).

Hatco contends that Grace cannot invoke either prong of Rule 10(e) here. As to any difference between the record and what truly occurred, Hatco argues there is no such difference. At the January 19 conference, the Court never expressly denied the demands for a jury trial, but only indicated that it would deny the requests. Therefore, the record accurately reflects what transpired— the Court never expressly denied the jury demands and the record contains no order denying the demands.

As to the omission of a material matter, Hatco simply states that there was no "error or accident" here—there is no order in the record because Grace failed to press the Court for an order or ruling on the jury trial issue. Hatco's arguments deserve little consideration. This motion is not an attempt ex post by Grace to include on appeal issues that were not before this Court. The parties were asked by the Court to brief the jury trial question. The parties complied, and then some, by filing two briefs apiece.

At the January 19 conference, the Court stated that it would—or intended to—convene a non-jury trial in July 1993. It is irrelevant whether it was or was not an express order, off the record, denying the demands. Hatco's submission on March 10, 1993, regarding new case law, indicates that the Court most likely was expressing its intention, rather than its final decision, at the January 19 conference.

Nonetheless, other events subsequent to the January 19 conference clearly indicate that the parties perceived that the Court had denied the jury demands. By April 15, 1993, counsel for both parties consented to CMO No. 3, which provides for the filing of proposed findings of fact and conclusions of law after trial—submissions reserved specifically

for non-jury trials. *See Hill & Range Songs v. Fred Rose Music, Inc.*, 570 F.2d 554, 558 (6th Cir.1978) (stating that "[i]t is not unusual for the court in a non-jury case to request counsel for both parties to submit proposed findings of fact and conclusions of law"). Prior to the execution and entry of CMO No. 3, neither Hatco nor Grace made any attempt to withdraw their jury demands. *See* Fed. R.Civ.P. 38(d) (providing that "[a] demand for trial by jury ... may not be withdrawn without the consent of the parties").

Consequently, this Court finds that Grace has properly invoked Rule 10(e) to complete the record in this litigation. The absence of a recorded order denying the parties' jury demands clearly reflects a difference of what actually transpired, and is most likely the result of "accident or error" by the parties and the Court.[1] If Hatco wishes to maintain its position that Grace waived its jury demand, it may do so before the Third Circuit.[2]

## B. The Demand and Denial of a Trial by Jury

Having concluded that Grace's application under Rule 10(e) is appropriate, the next step is to determine the substance of the order to be entered. Grace has submitted to the Court a proposed order which simply states that "Grace's motion for a jury trial, which was filed in November of 1992, is deemed denied as of July 12, 1993, the date when this action commenced." Hatco argues, and the Court agrees, that such a conclusory order, without explanation, oversimplifies a difficult decision made all the more complex because it must come in hindsight after certain events and the trial have taken place. Consequently, the Court will not summarily sign Grace's proposed order.

Timing is a factor in the Court's analysis. Between the time the parties submitted their briefs in late 1992, and the non-jury trial began in July 1993, the complexion of the case changed markedly. Four of the parties' claims ultimately were not tried: Hatco's common law contract and strict liability claims and Grace's common law indemnification and Spill Act contribution counterclaims. However, the arguments briefed by the parties in late 1992 reflect the inclusion of these claims in the case.

The Court will not retroactively resolve the jury trial question with any of these untried claims in mind. Grace identifies as a proposed issue on appeal its right to a jury trial on its Spill Act contribution claim. The Court dismissed this counterclaim on summary judgment. Whether this counterclaim could have or would have been tried to a jury has no relevance to the issue at hand. The Court tried only the following claims: Hatco's CERCLA and Spill Act claims and Grace's CERCLA contribution counterclaim. Because these were the only issues tried to the Court on the merits, the Rule 10(e) order will reflect a denial of the jury trial demands with respect to these claims only.

### 1. The Seventh Amendment—Law Versus Equity

◼ The Seventh Amendment to the United States Constitution provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend VII. The phrase "suits at common law" refers to actions in which legal

---

1. The Court is not unwilling to accept some responsibility for the proper entry of an order. However, the parties must accept and bear a great measure of responsibility for seeing that the record is complete. This Court carries a docket of approximately 300 cases and cannot monitor the record for all counsel that come before it. The pending matter should have been addressed over a year ago, prior to the July 1993 trial, and the Court must voice some degree of displeasure with Grace's dilatory application.

2. Where a party has properly demanded a trial by jury, "participation in a bench trial without objection constitutes a waiver of the jury trial right." *Royal Am. Managers v. IRC Holding Corp.*, 885 F.2d 1011, 1018 (2d Cir.1989). *See also FMC Aero Indus., Inc.*, 998 F.2d 842, 845 (10th Cir.1993) (after demanding jury trial in CERCLA cost recovery action, "party waived any right .. to a jury trial by signing the pretrial order [which stated that trial would be non-jury] and participating in the bench trial"); *White v. McGinnis*, 903 F.2d 699, 703 (9th Cir.) (*en banc*), *cert. denied*, 498 U.S. 903, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990). The Court concludes that such a waiver by Grace did not occur given the Court's "ruling" at, or after, the January 19 conference.

rights are adjudicated as opposed to actions where equitable rights alone are at issue and equitable remedies are administered. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990).

■ The Seventh Amendment right to a jury trial also extends to causes of action created by Congress. *Id.; see also Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (concluding that Seventh Amendment requires jury trial on demand "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law"). To determine whether the right to a jury trial exists under particular CERCLA provisions, a court must assess (1) the nature of the issues to be raised and remedies sought at trial, and more importantly, (2) whether the remedies sought are legal or equitable. *Wooddell v. International Brotherhood of Elec. Workers, Local 71,* 502 U.S. 93, 112 S.Ct. 494, 497–98, 116 L.Ed.2d 419 (1991).

### 2. Hatco's CERCLA and Spill Act Claims

The Court need not address the jury trial demand with respect to Hatco's Spill Act contribution claim. Hatco did not demand a trial by jury on its Spill Act claim, with the exception of the treble damages issue which was not tried. Therefore, as to Hatco's claims, the Court need only consider the right to a jury trial in relation to the CERCLA cost recovery claim.

■ The case law is generally uniform in holding that CERCLA cost recovery actions, like Hatco's under 42 U.S.C. § 9607(a)(4), are to be tried to the court because they seek restitution, and restitution is an equitable remedy. *United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 749 (8th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *Greene v. Product Manufacturing Corp.,* 842 F.Supp. 1321, 1322 n. 1 (D.Kan.1993); *American Cyanamid Co. v. King Indus., Inc.,* 814 F.Supp. 209, 213–14 (D.R.I.1993). Hatco was not entitled to a jury trial on its CERCLA claim; Grace was not entitled to rely on Hatco's demand.

### 3. Grace's CERCLA Counterclaim

■ The right to a jury trial is a much closer question on Grace's CERCLA contribution claim under 42 U.S.C. § 9613(f) than on Hatco's cost recovery claim under 42 U.S.C. § 9607(a). The existing law is not so clear with respect to CERCLA contribution claims. CERCLA provides:

> [a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a).... Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate....

42 U.S.C. 9613(f)(1).

The right to a jury trial in contribution actions is not expressly contained in this, or any other, CERCLA provision. *See infra* at 774–775 n. 3. The parties located the two or three existing opinions that directly address this question. Grace cites *United States v. Shaner,* No. 85–1372, 1992 WL 154618 (E.D.Pa. June 15, 1992). Hatco points to *American Cyanamid Co. v. King Indus., Inc.,* 814 F.Supp. 215 (D.R.I.1993); *see also Richmond, Fredericksburg and Potomac R.R. Co. v. Clarke,* No. 90–336, 1991 WL 321033 (E.D.Va. Jan. 22, 1991).

The *Shaner* court concluded that CERCLA section 9613(f) claims are "legal in nature and thus create an implicit right to jury trial." *Shaner,* 1992 WL 154618, at *3. The court reached this conclusion by reasoning that a section 9613(f) claim is analogous to a third-party partial comparative indemnity claim in an action initiated under the Federal Tort Claims Act ("FTCA"). *Id.* (citing *Palmer v. United States,* 652 F.2d 893 (9th Cir.1981), *overruled on other grounds, White v. McGinnis,* 903 F.2d 699 (9th Cir.) (en banc), *cert. denied,* 498 U.S. 903, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990)).

The *American Cyanamid* court had the benefit of the *Shaner* decision, but rejected

its analysis and conclusion, and ultimately held that there is no right to a jury trial on section 9613(f) contribution claims. 814 F.Supp. at 213–14. The Court agrees. The analogy to the FTCA and other negligence concepts is not appropriate where the precipitating claim is grounded in equity. In the cases cited in *Shaner* (*see In re N–500–L Cases*, 691 F.2d 15 (1st Cir.1982); *Palmer*, 652 F.2d at 893; *Globig v. Greene & Gust Co.*, 184 F.Supp. 530 (E.D.Wis.1960)), the claims giving rise to the contribution claims were legal in nature—grounded on negligence.

In the instant case, the precipitating issue underlying Grace's contribution claim was the potential liability on Hatco's claim for response costs under section 9607(a)—a claim in equity. The "issues of response cost liability and apportionment of restitutionary relief are equitable in nature, and do not entitle defendants to a trial by jury [on a section 9613(f) contribution claim]." *American Cyanamid*, 814 F.Supp. at 214.[3] The Court concludes that there is no right to a jury trial under section 9613(f) where the precipitating claim is a claim in equity under section 9607(a) for recovery of clean-up costs. Therefore, Grace was not entitled to its demand for a jury trial on its Second Counterclaim under CERCLA.

## CONCLUSION

The Court will grant Grace's application for an order to complete the record under Federal Rule of Appellate Procedure 10(e). The order is attached and, in accordance with the rationale provided above, deems denied

the parties' requests for a jury trial on those issues tried to the Court in July 1993.

An appropriate order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 10th day of August, 1994,

ORDERED that the motion of defendant/third-party plaintiff W.R. Grace & Co.—Conn. ("Grace") for an order pursuant to Federal Rule of Appellate Procedure 10(e) is granted; and it is further

ORDERED that the demands of plaintiff Hatco Corporation ("Hatco") and of Grace for a jury trial are deemed denied with respect to the following claims:

1. Hatco's claim for recovery of response costs under 42 U.S.C. § 9607(a) (Count One);

2. Hatco's claim for contribution under the New Jersey Spill and Compensation Act (Count Four), with the exception of the treble damages issue; and

3. Grace's counterclaim for contribution under 42 U.S.C. § 9613(f) (Second Counterclaim).

---

**3.** Not only does the Court agree with *American Cyanamid* court's assessment of *Shaner*, it is also persuaded by the language of section 9613(f)(1), which states that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." The language itself is not enough to find that no jury trial right exists under section 9613. *See American Cyanamid*, 814 F.Supp. at 212 (concluding that the tasks of resolving claims and allocating costs is described in discretionary terms and is not expressly assigned to the judge); *Shaner*, 1992 WL 154618, at *3 (concluding that the term

"equitable" does not necessarily mean "equity" over "law" but may be used to describe "an attempt to do right and to deal fairly between the parties").

Despite the provision's ambiguity on the law versus equity question, the Court is nonetheless persuaded by the reference to and utilization of equitable factors, which contributes to the perception that the section 9613(f) contribution claim, at least in this particular action, is part and parcel of Hatco's precipitating section 9607(a) claim, as far as determining the total amount to be recovered in restitution for clean-up costs.