## In re BURBANK ENVIRONMENTAL LITIGATION.

**Marlene Hook, an individual; Carmen Lacy, an individual; Jill Thomas, an individual; Mark Thomas, an individual; Jeani Brown, an individual; Millard Brown, an individual; Marion Flatt, an individual; Wayne Flatt, an individual; and Michael Signorelli, an individual, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Lockheed Martin Corporation, a Maryland corporation Defendant.**

**Nos. CV 96–5584, CV 96–7128.**

United States District Court, C.D. California.

April 2, 1998.

for the decision.

Joseph W. Cotchett, Bruce L. Simon, Virginia E. Hewitt, Cotchett, Pitre & Si-

mon, Burlingame, CA, Nicholas E. Chimicles, Chimicles & Tikellis, Haverford, PA, Patrick J. Grannan, Kramer, Kaslow & Grannan, LLP, Los Angeles, CA, Hector G. Gancedo, Tina B. Nieves, Gancedo & Nieves, Pasadena, CA, for Hook/Thomas, plaintiffs.

Brian Brandt, Law Offices of Brian Brandt, Upland, CA, for Vincelli, plaintiffs.

Stephen Ball, Law Offices of Stephen Ball, Pasadena, CA, for Starr/Ramos, plaintiffs.

Marc Gentry Penso, Law Offices of Marc Penso, Los Angeles, CA, for Gustafson, plaintiffs.

Pierce O'Donnell, O'Donnell & Shaeffer, LLP, Los Angeles, CA, Robert W. Loewen, Thomas S. Jones, Amanda R. Wheeland, Gibson, Dunn & Crutcher, LLP, Irvine, CA, Kevin B. Carter, O'Melveny & Myers, LLP, Los Angeles, California, for defendant Lockheed Martin Corporation.

## MEMORANDUM OF DECISION

PFAELZER, District Judge.

### I.

### BACKGROUND

Plaintiffs bring this action against defendant Lockheed Martin Corporation ("Lockheed") under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). Plaintiffs assert related state law claims for negligence, negligence per se, absolute liability for ultrahazardous activity, trespass, private nuisance, and public nuisance. Plaintiffs seek response costs under CERCLA; permanent injunctive relief; compensation for property losses, including stigma damages; certification of the property damage, personal injury and medical monitoring subclasses and the establishment of a method to address any individual issues regarding causation and damages; an order mandating the defendant to take every action necessary to assure all relief requested is attained and funded; maintenance of jurisdiction until all relief is obtained; attorneys' fees and costs and interest; and punitive damages.

Defendant Lockheed operated aircraft manufacturing facilities at its Burbank site from 1929 through the early 1990's. Lockheed used trichloroethylene ("TCE"), and perchloroethylene ("PCE") through the 1970's and part of the 1980's. Lockheed also used hexavalent chromium, but this use diminished by 1992. After notification from the EPA that Lockheed was potentially liable under CERCLA for groundwater contamination at the San Fernando Valley Superfund Site, Lockheed agreed to remediate a portion of the Burbank site.

Several lawsuits have been filed against Lockheed based on this contamination. In 1994, over 1300 Burbank residents hired counsel to advise them regarding their claims for contamination. Before filing suit, these residents and Lockheed entered into a settlement (the *"Fournier* Settlement") in 1996 for a large sum of money. Soon after hearing about the *Fournier* Settlement, plaintiffs in this suit filed their Complaint against Lockheed.

On March 9, 1998, the Court heard oral argument on plaintiffs' Motion for Summary Adjudication of Certain Uncontroverted Facts and Conclusion of Law; defendant's Motion for Summary Adjudication of CERCLA Issues; defendant's Motion for Summary Adjudication of Medical Monitoring Issues; defendant's Motion for Summary Adjudication of Property Issues; defendant's Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Issues Based on Statute of Limitations Defense; class plaintiffs' Cross–Motion and Motion for Summary Adjudication of Property Issues; and defendant's Cross–Motion for Summary Adjudication of the Ultrahazardous Activity Issue.

### II.

### DISCUSSION

A. *CERCLA*

Plaintiffs assert a private cost recovery action pursuant to Section 107 of CERC-

LA. CERCLA provides for a private right of action against responsible parties for "necessary costs of response incurred by any person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Plaintiffs allege their property has been contaminated with TCE, PCE, and hexavalent chromium. They claim they have incurred response costs pursuant to CERCLA, including medical monitoring, water and air filtration systems and barriers, expert costs to monitor exposure and contamination, and natural resource costs.

### 1. Medical Monitoring Costs

■ The Ninth Circuit has held private medical monitoring costs are not recoverable response costs under Section 107 of CERCLA. *Durfey v. E.I. DuPont De Nemours Co.*, 59 F.3d 121, 125 (9th Cir. 1995); *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1477 (9th Cir.1995). Plaintiffs state that they raise this issue only to preserve it for appeal. Thus, plaintiffs' medical monitoring costs are not recoverable response costs under CERCLA.

### 2. Water Supplies, Filtration Systems, and Barriers

■ Response costs include removal and remedial action, including costs to monitor, assess, and evaluate the release of hazardous substances, and costs to limit access to the property or provide alternative water supplies. 42 U.S.C. § 9601(23); 42 U.S.C. § 9601(24). A response cost must be necessary and consistent with the national contingency plan, and this is a question of fact. *Cadillac Fairview/California v. Dow Chemical Co.*, 840 F.2d 691, 695 (9th Cir.1988).

■ Plaintiffs state they purchased bottled water, water filtration systems, pool covers, and air filtration systems in response to defendant's contamination of the Burbank area. CERCLA specifically states water filtration systems and barriers such as fences are response costs. The air filter and pool cover serve as barriers much like a fence, and they could constitute a response cost. Plaintiffs' costs for these items may be recoverable as response costs under CERCLA if they were necessary, in response to defendant's acts, and consistent with the national contingency plan.

### 3. Expert Fees

Section 107 of CERCLA does not provide for the award of a private litigant's attorneys' fees. *Key Tronic Corp. v. United States, et al.*, 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). However, "some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of 107(a)(4)(B)." *Id.* at 820, 114 S.Ct. 1960. A litigation cost that could be a response cost is payment for attorneys to identify other potentially responsible parties. *Id.* These efforts are compensable because apart from reallocating costs, they increase the probability that a cleanup effort will be effective and be financed. *Id.*

■ Plaintiffs argue that attorney and expert efforts to identify the geographical area that requires remediation and/or removal and determine the extent of the toxic plumes for water, air and ground pathways should be recoverable under *Key Tronic* because these efforts assist in identifying the scope of the problem. It is possible that a determination of the extent of contamination would help to remediate the contamination and would serve a purpose other than reallocating costs. Plaintiffs' claim for recovery of these expert fees may be recoverable under CERCLA.

### 4. Natural Resource Damages

■ Defendant argues plaintiffs lack standing to recover under CERCLA for natural resource damages. Under CERCLA, only natural resource trustees acting on behalf of the federal government, the state, and certain Indian tribes may bring an action for damages to natural resources. 42 U.S.C. § 9607(f). Plaintiffs

are private parties bringing this suit, and they do not bring the suit on behalf of the government or Indian tribes. Thus, plaintiffs' claim under CERCLA for natural resource damages is dismissed.

### 5. Statute of Limitations

Under CERCLA, removal claims are subject to a three year statute of limitations, and remediation claims are subject to a six year statute of limitations. 42 U.S.C. § 9613(g)(2). Plaintiffs' expert costs that relate to removal and remediation of the contaminants and plaintiffs' alleged response costs for water and air filtration systems and barriers may be either removal or remediation costs. Any of these costs that were incurred more than six years before plaintiffs filed this claim are barred by the statute of limitations.

## B. Negligence and Negligence Per Se

### 1. Property Damage and Personal Injury

■ In a tort action for negligence or negligence per se, a three year statute of limitations applies to claims for real property damage, and a one year statute of limitations applies to claims for personal injury. Cal.Civ.Proc.Code § 338; Cal.Civ. Proc.Code § 340. Where a plaintiff's discovery of the injury is delayed, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal.Rptr. 658, 662, 751 P.2d 923 (1988). Once the plaintiff suspects the wrongdoing, she must find the facts necessary for suit and decide whether to file. *Id.* "[I]t is the discovery of facts, not their legal significance, that starts the statute." *Id.* at 663, 751 P.2d 923.

Defendant argues plaintiffs had reason to know of their injuries more than three years before they filed this suit in 1996; therefore, the one year and three year statutes of limitations bar their claims. Defendant points to the media, facility, government agencies and public meetings, lawsuit, city council and citizen groups, Burbank library, and plaintiffs' specific contacts as evidence that plaintiffs knew or should have known of their alleged injuries before 1993.

A plethora of newspaper articles and multiple newscasts prior to 1993 reported Lockheed's involvement in contamination of the Burbank area. All twelve plaintiffs in this action subscribed to one or more of the newspapers that reported the releases of TCE, PCE and hexavalent chromium in the Burbank facility, air and groundwater contamination, and the link between these chemicals and cancer.

The plaintiffs also live in close proximity to the Lockheed site. It is therefore reasonable to assume that they must have witnessed the Lockheed demolition and remediation efforts between 1991 and 1993, and they must have noticed posted signs that warned of hazardous substances at the site.

Over 109 government reports and publications relating to contamination in Burbank and Lockheed's remediation process were published and available to the public before 1993. Government agencies also issued public notices and held 79 public meetings relating to the contamination. The EPA sent "fact sheets" to interested residents. Public notice of the Consent Decree occurred in 1991, and Lockheed sent a notice concerning the Vapor Extraction System ("VES") to residents living near the facility in 1994.

Employees filed lawsuits against Lockheed between 1986 and 1992 based on the use of chemicals at the site, and 1300 Burbank residents hired lawyers to assert claims against Lockheed in 1994. These residents did not file suit, but they had reason to know of injuries in 1994.

Prior to 1993 there were 32 City Council meetings discussing the Burbank contamination, and 35 more meetings took place between 1993 and 1995. Several citizen groups formed to address the contamination, and individuals took part in raising

public awareness on the issue by sending letters in mass mailing campaigns.

Moreover, the Burbank Public Library served as a repository of information on the Lockheed contamination, in addition to four other public libraries.

Finally, defendant points to plaintiffs' specific statements showing that each one knew of the contamination before 1993. For example, Mr. and Mrs. Gustafson had their water tested in the 1980's because they had read about the contaminated drinking water. Mr. Gustafson read articles about the Lockheed contamination. Mrs. Gustafson noticed problems with her paint, flowers, and trees since 1989. Mr. Cameron read newspaper articles about the contamination and noticed the water tasted poorly in 1991. Ms. Hook subscribed to newspapers; saw the remediation activity at Lockheed; and attended meetings on the VES before 1993. Ms. Lacy purchased bottled water in 1977 because tap water tasted poorly; experienced headaches in 1991 that were caused by her knowledge of the contamination; and regularly read the paper. Mr. Flatt saw chemicals spill into the ground while at Lockheed prior to 1995, and he smelled a weird odor outside the house 3 years ago. Mrs. Flatt has been concerned her water was contaminated since the 1970's. Mr. and Mrs. Flatt subscribe to the newspaper. Mr. and Mrs. Thomas have had eye problems since 1994 due to the water; suffered headaches in 1994 due to the soil; installed a water filter in 1994 because of fear of contamination; and saw workers on Lockheed's property with respirated suits. Mrs. Thomas' brother was part of the *Fournier* settlement. Mr. and Mrs. Brown knew something was wrong in the 1980's. Mr. Signorelli suffered from bronchitis six years ago; saw black plumes coming from Lockheed prior to 1995; and watched the news.

These facts and admissions by plaintiffs clearly demonstrate that plaintiffs not only should have known, but actually knew, of the Burbank contamination prior to 1993. The Burbank contamination received much publicity in the 1980's and early 1990's, and plaintiffs were especially involved and concerned with the contamination and its effects at that time.

The only way Plaintiffs' negligence and negligence per se claims can survive the statute of limitations bar is if plaintiffs' allege defendant's behavior ·since 1995 caused plaintiffs' personal injuries or defendant's behavior since 1993 caused plaintiffs' property damages. Plaintiffs do not point to any injuries they suffered that were caused by defendant's behavior since 1995. However, plaintiffs allege defendant's behavior has damaged plaintiffs' property since 1993. The remediation activity and VES system are continuing in Burbank. If these activities constitute negligence, and they caused damage to plaintiffs' property, plaintiffs' claims for negligence as to injury caused by this behavior since 1993 are not barred by the statute of limitations. Plaintiffs' claims for negligence and negligence per se based on all other facts are barred by the statute of limitations.

## 2. Medical Monitoring

■ A plaintiff is entitled to medical monitoring as damages where specific monitoring beyond that which an ordinary individual should pursue is necessary as a direct consequence of the plaintiff's exposure to contamination caused by the defendant. *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 580, 863 P.2d 795 (1993). As such, plaintiffs' medical monitoring claims arose when plaintiffs first had reason to suspect that contamination occurred and that plaintiffs would be more susceptible to medical problems due to the contamination. The facts above demonstrate that plaintiffs knew or should have known about the contamination and the risks involved with the contamination long before 1995. Thus, plaintiffs' request for medical monitoring is barred by the one year statute of limitations.

## C. Strict Liability

■ The determination whether a particular activity is ultrahazardous and subject to strict liability is a question of law to be determined by the Court based upon six factors. These factors are: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." Restatement (Second) of Torts § 520; *SKF Farms v. Superior Court*, 153 Cal. App.3d 902, 200 Cal.Rptr. 497, 499 (1984); *Edwards v. Post Transp. Co.*, 228 Cal. App.3d 980, 279 Cal.Rptr. 231, 233 (1991). All factors need not be present in a particular case for strict liability to apply. *Ahrens v. Superior Court*, 197 Cal.App.3d 1134, 243 Cal.Rptr. 420, 424 (1988).

Courts have held that risks associated with the use, storage and/or disposal of industrial solvents such as TCE and PCE can be avoided through the exercise of reasonable care. *See, e.g., Schwartzman, Inc. v. General Elec. Co.*, 848 F.Supp. 942, 945 (D.N.M.1993); *Greene v. Product Mfg. Corp.*, 842 F.Supp. 1321, 1326–27 (D.Kan. 1993). In both cases, the courts relied primarily on this consideration in holding strict liability did not apply. *See Schwartzman*, 848 F.Supp. at 945; *Greene*, 842 F.Supp. at 1327.

Defendant engaged in the same activities as the defendants in *Schwartzman* and *Greene*. Defendant used the chemicals to clean metal parts. If defendant had been aware of the proper storage and disposal process for these chemicals to avoid injury to the environment, the alleged injuries in this case would likely not have occurred.

■ While there is a high risk of harm of disposing of chemicals in the ground near a highly populated area, the act of using solvents to clean metal parts in an industrial site was not an ultrahazardous activity. Many industries use or have used TCE, PCE and hexavalent chromium, including other industrial plants and dry cleaners. These chemicals are used widely as solvents. It is not the use of these chemicals that is likely to cause harm. Rather, it is Lockheed's alleged behavior in using and disposing of the chemicals that created hazards. Moreover, Lockheed's activities benefitted the community by employing over 100,000 people, providing a tax revenue for Burbank, providing airplanes, and supporting the national defense.

After considering the six criteria for ultrahazardous activity, the Court concludes plaintiffs have not stated sufficient facts to establish the use of TCE, PCE and hexavalent chromium is an ultrahazardous activity. Thus, plaintiffs' claim for strict liability based on ultrahazardous activity is dismissed.

## D. Trespass and Nuisance

Plaintiffs offer five theories in support of their claims for trespass and nuisance. They contend: (1) their land is currently contaminated; (2) living over a contaminated aquifer constitutes an invasion and interference; (3) solvents "bubble up" from the aquifer in the form of soil gas "and may migrate as a gas from the groundwater surface into the overlying pore spaces ... [and then] rise to the ground surface and constitute invasion and/or interference"; (4) Lockheed's demolition activities caused dust and debris to create an invasion and interference; and (5) operation of the VES is an ongoing trespass and nuisance.

### 1. Trespass

■ A trespass is "an invasion of the interest in the exclusive possession of land, as by entry upon it." *Wilson v. Interlake Steel Co.*, 32 Cal.3d 229, 185 Cal.Rptr. 280, 283, 649 P.2d 922 (1982) (quoting Restatement (Second) of Torts § 821D, cmt. d). Trespass requires a

physical invasion of plaintiffs' land. *See San Diego Gas and Elec. Co. v. Superior Court,* 13 Cal.4th 893, 55 Cal.Rptr.2d 724, 750, 920 P.2d 669 (1996). A claim for trespass may be based on the presence of contamination on property. *Newhall Land and Farming Co. v. Superior Court,* 19 Cal.App.4th 334, 23 Cal.Rptr.2d 377, 383–84 (1993). A plaintiff has an actionable claim for trespass and is entitled to nominal damages even where no injury occurred to the property. *See Polin v. Chung Ho,* 8 Cal.App.3d 673, 87 Cal.Rptr. 591, 593 (1970). Trespass entitles the plaintiff to nominal damages as well as compensatory damages in amount that will compensate for all detriment proximately caused. *Costerisan v. Tejon Ranch,* 255 Cal.App.2d 57, 62 Cal.Rptr. 800, 802 (1967).

 Plaintiffs claim Lockheed's demolition of its plant and remediation of other contamination caused dust and debris to be deposited on plaintiffs' property. They claim this constituted a trespass. Defendant's only defense to this claim is that the dust and debris did not cause damage to the property. This defense does not invalidate plaintiffs' claim because trespass does not require physical injury if a physical intrusion onto the property is apparent. Thus, plaintiffs have stated a claim for trespass.

### 2. Private Nuisance

 A claim for private nuisance requires a plaintiff to show the defendant substantially and unreasonably interfered with plaintiff's use and enjoyment of the property. *San Diego Gas and Elec.,* 55 Cal.Rptr.2d at 751, 920 P.2d 669. A decline in property value alone without an interference with an actual property right does not support a claim for nuisance. *See Koll–Irvine Center Property Owners Ass'n et al. v. County of Orange,* 24 Cal.App.4th 1036, 29 Cal.Rptr.2d 664, 668 (1994).

 Plaintiffs allege Lockheed's demolition and remediation activities caused debris and dust to fly onto their property and created a substantial interference with plaintiffs' use and enjoyment of their property. Plaintiffs state in their declarations that due to Lockheed's remediation efforts, dust covered their furniture and their homes, pets died, and paint peeled. This damage to their property rights is sufficient to serve as the basis for their claim for private nuisance.

### 3. Public Nuisance

 To state a claim for public nuisance, a private citizen must allege injuries different in kind than injuries to the general public. Cal.Civ.Code § 3493. None of plaintiffs' allegations of interference with their property are in any way different from the interference that the general population allegedly suffered from Lockheed's actions. Therefore, plaintiffs lack standing to bring a claim for public nuisance.

### 4. Stigma Damages

 Stigma damages are only recoverable for a permanent trespass or nuisance, and they are not recoverable for a continuing trespass or nuisance. *See Santa Fe Partnership v. ARCO Products Co.,* 46 Cal.App.4th 967, 54 Cal.Rptr.2d 214, 220 (1996). A continuing nuisance or trespass is an ongoing tortious invasion of or interference with the plaintiff's property which can be discontinued or remediated. *See id.* at 219.

 Plaintiffs allege claims for both continuing and permanent trespass and nuisance. The only sufficient bases for the trespass and nuisance claims are minor contamination in the soil, dust and debris from the demolition and remediation activity, and contamination from the VES system. The contamination in the soil already meets EPA abatement levels. Plaintiffs do not point to any other damages caused by the trespass or nuisance that are not abatable. They merely allege the demolition and remediation activity caused dust and debris to come onto their property. When this process is over and the dust is removed, abatement will be

complete. Thus, all claims of trespass and nuisance are abatable. Stigma damages are not recoverable, and defendant's motion to dismiss the stigma damages is granted.

### 5. Statutes of Limitations

■■■ A three year statute of limitations applies to plaintiffs' claims for property damages. Exceptions apply to the statute of limitations where the plaintiff alleges a continuing trespass or nuisance. A claim for continuing nuisance or trespass is not subject to a statute of limitations defense because it is ongoing up to the time of the lawsuit. *See id.* at 219.

As discussed above, plaintiffs point to no evidence establishing a permanent nuisance. As such, all of plaintiffs' claims for trespass and nuisance are based on continuing violations. Thus, the three year statute of limitations does not apply to these claims.

### III.

### REMAINING ISSUES

Plaintiffs' claim for recovery under CERCLA based on medical monitoring and natural resource damages is dismissed. Plaintiffs' claim for recovery under CERCLA based on all response costs incurred more than six years before filing this suit are dismissed. Plaintiffs' claims for negligence and negligence per se based on personal injuries are dismissed because they are barred by the statute of limitations. Plaintiffs' claims for negligence and negligence per se based on property damages are dismissed except as to plaintiffs' allegations of property damage occurring within three years before plaintiffs filed this suit. Plaintiffs' request for medical monitoring is dismissed. Plaintiffs' claim for strict liability based on ultrahazardous activity is dismissed. Plaintiffs' claim for public nuisance is dismissed.

The only remaining claims in this suit are for recovery of response costs under CERCLA for air and water filtration systems and barriers and expert costs that were incurred within six years of filing this suit; negligence and negligence per se based on property damage that occurred within three years before filing this suit; trespass; and private nuisance.

The Court will rule on plaintiffs' Motion for Summary Adjudication of Certain Uncontroverted Facts at a later time.

### ORDER

On March 9, 1998, the Court heard oral argument on plaintiffs' Motion for Summary Adjudication of Certain Uncontroverted Facts and Conclusion of Law; defendant's Motion for Summary Adjudication of CERCLA Issues; defendant's Motion for Summary Adjudication of Medical Monitoring Issues; defendant's Motion for Summary Adjudication of Property Issues; defendant's Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Issues Based on Statute of Limitations Defense; class plaintiffs' Cross–Motion and Motion for Summary Adjudication of Property Issues; and defendant's Cross–Motion for Summary Adjudication of the Ultrahazardous Activity Issue. After considering the arguments in support of the motions, and having rendered its decision in accordance with the Memorandum of Decision,

IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion for Summary Adjudication of Conclusion of Law is denied.

2. Defendant's Motion for Summary Adjudication of CERCLA Issues is granted as to plaintiffs' claims for recovery based on medical monitoring, natural resource damages, and response costs incurred more than six years before filing this suit. Defendant's Motion for Summary Adjudication of CERCLA Issues is denied as to plaintiffs' claims for recovery based on air and water filtration systems and barriers and expert costs incurred within six years of filing this suit.

3. Defendant's Motion for Summary Adjudication of Medical Monitoring Issues is granted.

4. Defendant's Motion for Summary Adjudication of Property Issues is granted as to plaintiffs' claim for public nuisance and their request for stigma damages. Defendant's Motion for Summary Adjudication of Property Issues is denied as to plaintiffs' claims for trespass and private nuisance.

5. Defendant's Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Issues Based on Statute of Limitations Defense is granted as to plaintiffs' claims for personal injuries and plaintiffs' claims for property damage caused by negligence and negligence per se, except for those property damages that occurred within three years of filing this suit.

6. Class plaintiffs' Cross–Motion and Motion for Summary Adjudication of Property Issues is denied.

7. Defendant's Cross–Motion for Summary Adjudication of the Ultrahazardous Activity Issue is granted.